UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LUIS MARINO and GUSTAVO SERPA,

                Plaintiffs,                10 Civ. 4126

   -against-                                 OPINION

GRUPO MUNDIAL TENEDORA, S.A.,
BELNOVO, S.A., GLOBAL PLUS+
INVESTMENT MANAGEMENT LLC, and
GPIM HOLDINGS, INC.,

                Defendants.

------------------------------------------X

       USDC SDNY
       DOCUMENT
       ELECTRONICALLY FILED
       DOC #: 38
       DATE FILED: 3/17/11

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        YESKOO, HOGAN & TAMLYN LLP
        909 Third Avenue, 28th Floor
        New York, NY 10022
        By:  Stephen Hogan, Esq.

        Attorneys for Defendants

        REED SMITH LLP
        599 Lexington Avenue
        New York, NY 10022
        By:  Andrea J. Pincus, Esq.
            Kristina M. Mentone, Esq.

**Sweet, D.J.**

Defendants GPIM Holdings, Inc. ("GPIM Holdings") and Global Plus+ Investment Management LLC ("GPIM") (collectively, the "Defendants") have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint of Plaintiffs Luis Marino ("Marino") and Gustavo Serpa ("Serpa") (collectively, the "Plaintiffs"). Plaintiffs have moved for leave to file their Second Amended Complaint ("SAC"). Based upon the conclusions set forth below, leave to file the SAC is granted, and the motion to dismiss the SAC is denied in part and granted in part.

## Prior Proceedings

Plaintiffs' filed their Complaint on May 19, 2010 and, on June 2, 2010, filed an Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B).

Defendants Grupo Mundial Tenedora, S.A. ("GM") and Belnovo, S.A. ("Belnovo") are Panamanian companies, upon which service is not complete. Neither GM nor Belnovo has appeared.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LUIS MARINO and GUSTAVO SERPA,

                Plaintiffs,                10 Civ. 4126

  -against-                                    OPINION

GRUPO MUNDIAL TENEDORA, S.A.,
BELNOVO, S.A., GLOBAL PLUS+
INVESTMENT MANAGEMENT LLC, and
GPIM HOLDINGS, INC.,

                Defendants.

------------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiffs

    YESKOO, HOGAN & TAMLYN LLP
    909 Third Avenue, 28th Floor
    New York, NY 10022
    By:  Stephen Hogan, Esq.

    Attorneys for Defendants

    REED SMITH LLP
    599 Lexington Avenue
    New York, NY 10022
    By:  Andrea J. Pincus, Esq.
         Kristina M. Mentone, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 38
DATE FILED: 3/17/11

On September 28, 2010 and again October 2, 2010, Plaintiffs moved for leave to file a SAC. The SAC is identical to the Amended Complaint, but for the First Claim for Relief (Breach of Contract) which adds the following averment: "At all times relevant plaintiffs fulfilled all their contractual duties, including performance of all their duties specified in Section 3.6(b) of the GPIM LLC Agreement. All conditions precedent have been performed." (SAC ¶ 44.) The SAC also adds that Plaintiffs' employment was terminated "without cause." (Id. ¶ 47.)

The SAC contains five claims: (1) breach of contract, against GPIM; (2) breach of fiduciary duty, against Belnovo; (3) civil conspiracy; (4) aiding and abetting Belnovo's breach of fiduciary duty, against GM and GPIM Holdings; and (5) unjust enrichment, against GPIM Holdings.

The SAC contains the following facts, upon which the claims are based:

Plaintiffs and Pali Capital formed GPIM. (SAC ¶ 13.) Grupo Mundial, represented by its wholly-owned subsidiary, Belnovo, provided the financial commitment to start GPIM. (Id. ¶¶ 15, 17.) Plaintiffs were charged with the responsibility of

managing GPIM. Marino was the CEO and Serpa was the Managing Director. (Id. ¶ 14).

Pursuant to the GPIM LLC Agreement, Plaintiffs' entitlement to compensation was set forth as follows:

Section 3.6. Managing Directors, etc.

(ii) Compensation, etc. Other than with respect to the Participants, whose sole compensation for duties performed for the Company shall be Distributions in respect of the Economic Interest held by each as provided in this Agreement, the expenses associated with having such Managing Directors (including, without limitation, the compensation of such Managing Directors) shall be expenses of and paid by the Company. With respect to each of Marino and Serpa, so long as he is employed by the Company as a Managing Director he shall receive a monthly advance draw from the Company in the amount of US $10,000 as set forth in Section 6.4(a). The Managing Directors of the Company shall be at-will employees.

* * *

Section 6.4. Distributions

(a) Advance Draws. So long as he is employed by the Company as a Managing Director, on the 24th day of each month, each of Marino and Serpa shall receive a cash distribution of $10,000 out of, and solely to the extent of, Available Cash from Operations (the definition of which shall include, solely for purposes of this Section 6.4(a), Belnovo's initial Capital Contribution). Such distributions shall be treated as advance draws and be offset against any other distributions due to Marino and Serpa under the terms of this Agreement. To the extent there are no subsequent distributions to Marino and Serpa against which to offset these advance draws, neither Marino nor Serpa shall have any obligation to repay such unrecouped amounts to either the Company or Pali.

\* \* \*

Section 6.6. <u>Adjustments to Allocations, Distributions and Economic Interests Required by the MOU</u>

(b) Notwithstanding any other provision of this Agreement to the contrary, in the event of the termination of employment of either Marino or Serpa by the Company or any Pali Entity without "Cause" (as such term is defined in the MOU) or by such Participant for "Good Reason" (as such term is defined in the MOU) (i) , such Participant shall continue to receive distributions of Available Cash from Operations for a period of five (5) years from the date of termination, and (ii) effective immediately upon the end of such five (5) year period, such

Participant shall forfeit his right to any and all distributions of Available Cash from Operations (other than distributions attributable to Available Cash from Operations that had been accrued but not yet distributed as of such date), and the amounts that otherwise would have been distributed to the Participant but for such termination shall instead be distributed to PRAM for the life of this Agreement. In addition, upon the end of such five (5) year period, the Economic Interests of PRAM and the terminated Participant with respect to such distributions of Available Cash from Operations, and the allocations related thereto, shall be adjusted accordingly.

On January 16, 2009, the Board of GPIM met with Plaintiffs to inform them that Pali Capital and Grupo Mundial had decided to exit the business and divest their ownership of GPIM and to discuss the sale of GPIM. Plaintiffs allege that they were told that GPIM could only be saved if Plaintiffs took over, and accordingly asked Plaintiffs to make an offer. (SAC ¶ 33.)

Ultimately, Plaintiffs offered only $1.00 and the assumption of all liabilities to take ownership of GPIM. (Id. ¶ 35.) Following the offer, Plaintiffs were fired and GPIM was sold to a holding company, GPIM Holdings. (Id. ¶ 37.)

Plaintiffs have alleged in their claims that they were "entitled to receive a monthly advance in the amount of $10,000 (Section 3.6(a)(ii) of the Agreement), reimbursement of business expenses, and payments of Available Cash from Operations if their employment was terminated without Cause," and that "GPIM breached the GPIM LLC Agreement by not paying plaintiffs such amounts." (Id. ¶¶ 41-42.) Plaintiffs seek damages of "not less than $140,000 for uncollected payments due for the period January 2008 through February 2009, $30,000 in unreimbursed business expenses, and not less than $500,000 for unpaid distributions." (Id. ¶ 49.)

With regard to GPIM Holdings, Plaintiffs have alleged in the Third Claim for Relief that, "[u]pon Information and belief, defendant Belnovo, defendant Grupo Mundial, defendant GPIM Holdings, Pali Capital and Pali Holdings AM entered into a conspiracy whereby they agreed to transfer GPIM to GPIM Holdings at an unfair price." (Id. ¶ 55.) They conclude that

5

"Defendants Pali Capital's and Pali Holdings AM's conspiracy damaged plaintiffs to the extent of $2,000,000 by depriving them of a fair price for their holdings in GPIM." (Id. ¶¶ 56-57.)

Plaintiffs have alleged in the Fourth Claim for Relief that "Defendant GPIM holdings, the beneficiary of the unfair transaction, knew that the transfer was a violation of the fiduciary duties that the controlling members of GPIM owed members Marino and Serpa," that "GPIM Holdings knowingly participated in the scheme to defraud plaintiffs by acquiring GPIM's assets at less than fair value," and that "GPIM Holdings provided substantial assistance to Belnovo in connection with the scheme alleged [in the Complaint], and aided and abetted Belnovo's breach of its fiduciary duties to plaintiffs." (Id. ¶ 62.)

Plaintiffs allege in the Fifth Claim for Relief that "Defendant GPIM Holdings acquired GPIM from Pali Holdings AM, defendants Belnovo and plaintiffs for $1,000, a price substantially below the fair market value of GPIM," that "GPIM Holdings' purchase was not a bona fide arms' length transaction, but the product of defendants' unlawful scheme," and that, as a result, "GPIM Holdings has been unjustly enriched at plaintiffs' expense." (Id. ¶¶ 65-66.)

6

**The Rule 12(b)(6) Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a

factual allegation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

## A Valid Breach of Contract Claim Against GPIM has Been Pleaded

Plaintiffs had a number of duties as members of GPIM, including "the overall direction and overall supervision of the Company." GPIM LLC Agreement § 3.6(b) & (c). It is alleged that from January 2008 through their termination by GPIM, Plaintiffs fulfilled their obligations. (SAC ¶ 44.) Plaintiffs have further alleged that by the terms of the GPIM LLC Agreement, Plaintiffs were each entitled to receive a monthly advance draw in the amount of $10,000. GPIM LLC Agreement § 3.6(a)(ii).

Defendants have contended that Section 6.4(a) of the GPIM LLC Agreement limits Plaintiffs' rights to their monthly advances "out of, and solely to the extent of, Available Cash from Operations." However, Section 6.4(a) explicitly defines "Available Cash from Operations," for the purposes of paying Marino and Serpa pursuant to the "Advance Draws" provision of Section 6.4(a), to include "Belnovo's Capital Contribution." Section 5.2 lists Belnovo's Capital Contribution as $1.5 million.

8

In addition to the 14 monthly draws, each Plaintiff seeks reimbursement for unreimbursed business expenses, pursuant to Section 3.7 of the GPIM LLC Agreement, which Plaintiffs allege to have advanced in cash.

Plaintiffs have further alleged that Section 6.6(b) of the GPIM LLC Agreement entitled them to distributions of "Available Cash from Operations" in the event they were terminated without "Cause." There is, however, no allegation that there were funds that constituted "Available Cash from Operations." Instead, Plaintiffs have simply alleged that five-year distributions have not been paid.

Defendants have submitted an affidavit which establishes that there were no funds constituting "Available Cash from Operations." That factual issue does not, in the context of this motion, establish that no contract claim has been alleged.

The allegations that GPIM has breached its contract are adequate, with respect to the monthly draws and business expense reimbursement.

**The Civil Conspiracy Allegations Are Inadequate**

Defendants have contended that the Plaintiffs have failed to allege the requisite tort that is the subject of the civil conspiracy in the Third Claim of the SAC. (Def. Mem. 11.) However, Plaintiffs contend that the alleged breach of fiduciary duty by Belnovo in the Second Claim satisfies the requirement that there be an underlying tort. (SAC ¶¶ 50-53.)

New York recognizes a breach of fiduciary duty to be a tort. See, e.g., Sergeants Benevolent Ass'n Annuity Fund v. Renck, 19 A.D.3d 107, 110 (N.Y. App. Div. 2005) (holding that "breach of fiduciary duty is a tort"); Batas v. Prudential Ins. Co. of Am., 281 A.D.2d 260, 264 (N.Y. App. Div. 2001) (same); Restatement (Second) of Torts § 874 ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.").

However, "[i]n order to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff." Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., No. 99 Civ. 9623, 2007 WL 1040809,

at *26 (S.D.N.Y. April 4, 2007) (quoting Pope v. Rice, No. 04 Civ. 4171, 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005)); see Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Secs. Corp., No. 00 Civ. 8688(WHP), 2002 WL 362794, at *13-14 (S.D.N.Y. Mar. 6, 2002).

Here, Plaintiffs have not alleged that any Defendants other than Belnovo owed any fiduciary duties to Plaintiffs, particularly as Plaintiffs had no relationship with GPIM Holdings.  Plaintiffs have not countered Defendants' contention on this point.

Accordingly, the civil conspiracy claim is dismissed.

**Plaintiffs Have Adequately Alleged
Aiding and Abetting by GPIM Holdings**

Defendants have contended that Plaintiffs' Fourth Claim for Relief against GPIM Holdings should be dismissed because Plaintiffs have not sufficiently alleged "knowing participation" on the part of GPIM Holdings.  To avoid dismissal, Plaintiffs must allege "some facts, in non-conclusory terms, showing that the [defendant] . . . knowingly participated in . . . [the] breach."  Donaldson, Lufkin & Jenrette, 2002 WL

11

362794, at *10 (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990)).

Knowing participation in a breach of fiduciary duty requires "actual knowledge" and "substantial assistance." See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006). Thus, to "participate knowingly means to have '[a]ctual knowledge, as opposed to merely constructive knowledge, . . . and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty." Meisel v. Grunberg, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) (quoting Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 101-02 (N.Y. App. Div. 2006)).

Plaintiffs have not alleged that GPIM Holdings had actual knowledge of the larger purported scheme, nor do Plaintiffs attribute any specific fraudulent statements to GPIM Holdings. See Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Securities Corp., No. 00 Civ. 8688, 2003 WL 22218643, at *10 (S.D.N.Y. Sep. 25, 2003) (holding that where a complaint did not allege that the employee present at board meetings "knew that there was anything wrong with pursuing" the conduct

12

eventually described as a breach, actual knowledge was not sufficiently alleged).

Furthermore, a defendant may only be held liable for aiding and abetting a breach of fiduciary duty if it participated in the breach by providing "substantial assistance to the primary violator." Lerner, 459 F.3d at 294 (citation and quotations omitted). Substantial assistance exists only where the alleged aider and abettor "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." In re Sharp Int'l Corp., 403 F.3d 43, 50 (2d Cir. 2005). "[I]naction constitutes substantial assistance only when an 'independent duty to act was a duty owed to the defrauded [party],'" such as when a third party owed a fiduciary duty to the injured party. Kolbeck v. LIT America, Inc., 939 F. Supp. 240, 247 (S.D.N.Y. 1996) (quoting " Dillon v. Militano, 731 F. Supp. 634, 639 (S.D.N.Y. 1990)).

GPIM Holdings' alleged actions do not amount to substantial assistance of the purported breach of fiduciary duty by Belnovo. Plaintiffs allege that "Belnovo owed [P]laintiffs a fiduciary duty to not sell GPIM [LLC] at less than market value," and that the sale of GPIM was a breach of this fiduciary

13

duty. (SAC ¶ 60.)  Defendants have contended that GPIM Holdings was a non-actor in the sale of GPIM.

Plaintiffs argue in their opposition papers that the corporate veil of GPIM Holdings should be pierced, a theory absent from the SAC.  Defendants contend that a subsidiary corporation "is not liable for the acts of the parent or shareholder merely on the basis of alter ego." McCabe v. Henpil, Inc., 889 F. Supp. 983, 992 (E.D. Tex. 1995) (citation omitted.)  Furthermore, according to Defendants, although Plaintiffs claim other parties are behind the veil of GPIM Holdings, they have failed to provide the acts of GPIM Holdings constituting aiding and abetting with the particularity required under the heightened pleading standard.

However, it is alleged that GPIM Holdings was a wholly-owned and controlled shell subsidiary of GM set up for the sole purpose of receiving the proceeds of the below fair market value sale of GPIM to disguise the self-dealing transaction and to make it appear that GPIM had been sold to an independent third party.  Under this theory, GM's knowledge of the transaction should be attributed to GPIM Holdings.  Thus, according to the SAC, GPIM Holdings participated in the breach

14

of fiduciary duty by aiding and abetting the sale through its acquisition of the GPIM assets. (SAC ¶ 52.)

These allegations adequately allege an aiding and abetting claim.

**The Allegations of Unjust Enrichment Are Inadequate**

"[A] plaintiff seeking recovery on an unjust enrichment theory must allege that '(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendants to make restitution.'" Carmona v. Spanish Broad. Sys., Inc., No. 08 Civ. 4475, 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) (quoting CBS Broad. Inc. v. Jones, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006)) (citation omitted).

Plaintiffs have not alleged that GPIM Holdings was unjustly enriched, nor have they articulated any facts to support a value for GPIM beyond the $1,000 that Pali Capital accepted in exchange for GPIM's liabilities. Plaintiffs have not alleged any profit or benefit that GPIM Holdings received as a result of the sale of GPIM in January 2009. Indeed, Plaintiffs themselves bid only $1.00 for GPIM. (SAC ¶ 35.)

15

Stated simply, there can be no unjust enrichment where there is no enrichment at all.  See, e.g., Carmona, 2009 WL 890054, at *6.

As there is no allegation that Defendant has received anything of value, the claim for unjust enrichment is dismissed

**Conclusion**

Based on the conclusions set forth above, the motion to leave to file the SAC is granted.  The motion to dismiss is denied as to the breach of contract and aiding and abetting claims and granted as to the civil conspiracy and unjust enrichment claims.

It is so ordered.

New York, NY
March 17, 2011

_____
ROBERT W. SWEET
U.S.D.J.

16